# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2273

APPLETON PAPERS, INC.,

*Plaintiff-Appellant*,

*v.*

ENVIRONMENTAL PROTECTION AGENCY, and
UNITED STATES DEPARTMENT OF
JUSTICE ENVIRONMENT AND
NATURAL RESOURCES DIVISION,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11-C-318—**William C. Griesbach**, *Chief Judge*.

ARGUED OCTOBER 25, 2012—DECIDED DECEMBER 26, 2012

Before FLAUM, MANION, and ROVNER, *Circuit Judges*.

FLAUM, *Circuit Judge*.   After the government alleged
Appleton Papers Inc. ("API") and seven other companies
caused $1 billion in contamination in the Fox River near
Green Bay, Wisconsin, the government hired a consultant
that prepared reports on the companies' responsibility

for the contamination. API unsuccessfully sought discovery of these reports by challenging a consent decree between the government and another company.

Determined to see the content, it filed a Freedom of Information Act ("FOIA") request seeking the material, but the government refused under the FOIA exemption covering attorney work product. API eventually filed suit in federal district court, and we uphold the district court's decision in favor of the government. Even though the government used portions of its reports in two consent decrees, that use does not waive work product immunity for all the related content. API also misconstrues the privilege by erroneously suggesting that facts underlying the conclusions are unprotected. As a result, API's arguments boil down to a series of policy justifications that must be left for district courts in individual litigation instead of a FOIA request, which is not a substitute for discovery.

## I.  Background

### A.  Factual Background

This case originates out of contamination in the Lower Fox River and Green Bay caused by a handful of paper companies. The United States issued a unilateral administrative order under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), *see* 42 U.S.C. § 9601 et seq., to API and seven other "potentially related parties" ("PRPs"), alleging that the PRPs discharged polychlorinated biphenyls ("PCBs") into the

site from their facilities. Cleanup of the site is expected to cost approximately $1 billion.

In preparation for CERCLA litigation, the United States hired Amendola Engineering, Inc. ("Amendola"), as an environmental consultant to the Fox River matter. Amendola prepared a report in 2000 entitled "Preliminary Estimates of PCB Discharges to the Fox River 1945 to 1985." The report estimated the amount of PCB each PRP discharged into the water. The Environment and Natural Resource Division of the Department of Justice ("ENRD") released a partial copy of the report to API in 2000. It also released a partial copy of a revised version in 2001.

The government subsequently cited to the reports and post-2001 versions, which it had not released, in two consent decrees with other PRPs in the Fox River matter. First, the United States' brief in support of a consent decree with Fort James Operating Company estimated Fort James was responsible for 15-20% of the PCB contamination even though the 2000 and 2001 reports estimated Fort James's responsibility at 38% and 28% respectively. The district court in that case entered an order approving the consent decree over objection by the Clean Water Action Counsel. *See United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902 (E.D. Wis. 2004). Next, the government used the 15-20% estimate again in its brief in support of a consent decree with Georgia-Pacific Consumer Products (Fort James's successor-in-interest). Again the district court entered an order approving the consent decree relying, in part, on the

various versions of the Amendola report. API and NCR, another PRP,[1] opposed the order and sought additional discovery of the documents they seek in this case. The district court rejected API's and NCR's assertions "that the 15-20% figure has come out of left field." *United States v. NCR Corp.*, 10-C-910, Dkt. No. 130 (E.D. Wis. Apr. 4, 2011). The district court noted that the government's estimate was consistent with reports other than the 2000 and 2001 Amendola Reports, suggested "NCR and AP[I] do not seem to appreciate the distinction between a settlement negotiation and liability at trial," found the settlement was fair, and concluded the additional discovery that API and NCR requested was not required. *Id.* at 4-5.

## B. Procedural Background

Unsuccessful in its attempts to get full copies of the Amendola Reports, API submitted a FOIA request to ENRD requesting all copies, drafts, and supporting information related to the 2000 and 2001 Amendola Reports as well as subsequent versions. The government provided two documents—what API calls partial copies of the 2000 and 2001 Amendola Reports, which the government previously released—but withheld 101 documents under FOIA exemptions. API filed an administra-

---

[1] API apparently has a cost-sharing agreement with NCR. This explains API's interest in the Amendola Reports despite API's claim that a district court has already absolved it of responsibility in the Fox River matter.

tive appeal, to which the government did not respond. API then filed an appeal in the Eastern District of Wisconsin.

The government moved for summary judgment, asserting the documents were work product subject to FOIA exemption 5. The district court agreed and granted the motion. The court rejected API's argument that "purely factual material" could be separated from the protected material. In rejecting this claim, the district court relied on Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure, which prevents discovery of the facts in a nontestifying expert witness's report. The district court next rejected API's argument that "because some of the results of the consultant experts" were released in the consent decrees, work product immunity no longer applied to "all of the underlying technical data and other materials underlying those results." The district court cited Federal Rule of Evidence 502(a)(2). Under this rule, subject matter waiver occurs only if the undisclosed material "ought in fairness be considered together" with the disclosed material. The district court applied the rule and found that the government's submissions in the consent decrees were passive and did not result in waiver. API timely appeals.

## II. Discussion

We do not review entries of summary judgment in FOIA cases de novo. Instead, we "determine whether the district court had a sufficient factual basis for its ruling and, if so, whether the court's decision was clearly

erroneous." *Enviro Tech Int'l, Inc. v. U.S. EPA*, 371 F.3d 370, 373 (7th Cir. 2004). The government bears the burden of proof because the statute is construed in favor of disclosure. *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995).

FOIA requires government agencies to disclose their records to the public. 5 U.S.C. § 552(a). However, subsection (b) exempts nine categories of material "that represent the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses." *FTC v. Grolier Inc.*, 462 U.S. 19, 23 (1983) (internal quotation marks and original brackets omitted); *see* 5 U.S.C. § 552(b). Specifically, subsection (b)(5) protects "inter-agency and or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption covers work product, which prevents "a party [from] discover[ing] documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its . . . agent." Fed. R. Civ. P. 26(b)(3)(A); *see Grolier*, 462 U.S. at 20 ("It is well established that [exemption 5] was intended to encompass the attorney work[ ]product rule."); *see generally Hickman v. Taylor*, 329 U.S. 495 (1947) (establishing work product immunity).

In assessing the validity of a work product claim under exemption 5, we determine whether "the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *Grolier*, 462 U.S. at 26. In litigation, Federal Rule of Civil Procedure 26(b)(1) permits a party to discover information "relevant" to a claim or

defense. Fed. R. Civ. P. 26(b)(1) (parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). But Rule 26(b)(3)(A) protects, as privileged, relevant material that constitutes work product. Thus, this material is not "disclosed upon a showing of relevance" and falls under exemption 5 in FOIA cases. *Grolier*, 462 U.S. at 26.

Of course, there are ways to overcome the privilege in an individual case. For instance, a party may overcome a work product claim by showing "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Additionally, although a report prepared in anticipation of litigation is work product, the party must disclose that report if its author plans to testify at trial. Fed. R. Civ. P. 26(a)(2)(B). However, we ignore these case-specific considerations in FOIA cases. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n.16 ("The ability of a private litigant to override a privilege claim set up by the government, with respect to an otherwise disclosable document, may itself turn on the extent of the litigant's need in the context of the facts of his particular case; or on the nature of the case. However, it is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling." (internal citations omitted)). The requestor is limited to a showing of "relevance" in a "normal" case. It cannot make fairness arguments related to a hypothetical case or hypothetical litigant.

Nor can it assert that *it* would be entitled to the document in litigation with the government—each member of the public is equally entitled to make a FOIA request. *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S 487, 499 (1994).

These principles underlie the problems with API's arguments. Although API agrees the documents are work product, it argues that the "purely factual material" is separable from Amendola's "opinions." As a result, API argues the district court should have reviewed the documents in camera and separated them. It also argues that the government waived the privilege with respect to all of the requested documents because it used select portions of those documents in its consent decrees with other PRPs. We conclude that all of the documents sought are work product, and although the government waived protection for the specific information submitted in the consent decrees, that waiver does not constitute waiver of all related material.

## A. All of the Requested Material Is Protected Work Product

API seems to agree the documents it seeks are, at least in part, work product. The district court's findings, which are entitled to deference, confirm this. The United States retained Amendola and other firms in preparation for the Fox River and other litigation, and "[t]hese firms have produced draft reports and other documents for the government's use in litigation." The documents "consist of the technical reports, drafts, data[,]

and other communications about those reports." These findings, which are consistent with the record and API's own assertions, fall under Rule 26(b)(3)(A), making them work product and protected under exemption 5.

API's first and third arguments on appeal assert that any "factual" material is separable from "opinions." In other words, it believes that factual material underlying the report's conclusions is not protected work product. This argument ignores Rule 26, which protects *all* "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). It does, however, separate "fact" work product and "opinion" work product. "Fact" work product is discoverable in the rare case where party makes the "substantial need" showing discussed above. Fed. R. Civ. P. 26(b)(3)(A)(ii) (permitting discovery if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"); *see generally Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002) (This burden is difficult to meet and is satisfied only in "rare situations, such as those involving witness unavailability."). But even when a litigant makes the substantial need showing, "opinion" work product remains protected. Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials [for which a party has a substantial need], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Thus, although there are differing levels of protection for fact

and opinion work product, the Federal Rules protect
both types.[2] *See In re Grand Jury Proceedings, Thursday
Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th
Cir. 1994). They require a showing beyond relevance
before they are discoverable, and as such, they are
covered by FOIA exemption 5. *See Grolier*, 462 U.S. at 26.
Indeed, API did not need to look further than *Hickman*
to understand the error in its argument. There, the
Court protected the facts the lawyer obtained from inter-
viewing witnesses. *Hickman*, 329 U.S. at 498.

API also argues that the district court clearly
erred in relying on Rule 26(b)(4)(D), which prohibits
parties from discovering the research of a nontestifying
expert. This rule is simply an application of the work
product rule. The consultant's work will, by definition,
be work product because the party uses the con-
sultant "in anticipation of litigation." *See* Fed. R. Civ.
P. 26(b)(4)(D). The district court did not use the rule as
independent authority to reject API's claim. Rather, the
district court used it as an illustration. Because the rule
protects "*facts* known or *opinions* held by an expert," the
rule shows that facts and opinions alike are protected
and therefore not separable. *See id.* (emphases added). API
also cites authority for the proposition that once a party

---

[2]  It is possible that all of the documents are "fact" work product
comprised of Amendola's factual studies. This, however,
would not alter our conclusion. We make the distinction
between fact and opinion work product only to illustrate API's
error.

relies on the research of a nontestifying expert, it falls out of the protection of the Rule and becomes freely discoverable. True, but this is the same litigation-specific argument that API relies on throughout its brief. Parties need only disclose work product in the particular case they use it. This argument echoes the waiver argument we reject below—that the government used a portion of the report in a consent decree does not mean that the Rule requires disclosure in every case going forward.

### B. The Government Did Not Waive Work Product Immunity

Next, API argues that by using some of the documents in support of the consent decrees with Fort James and Georgia-Pacific, the government waived protection for all of the documents API now seeks. API offers little support for its implicit premise that disclosure of some information results in disclosure of all of the material concerning the same subject. That principle applies more broadly to the attorney-client privilege, where disclosure of privileged information can destroy the privilege. Generally, a party that voluntarily discloses part of a conversation covered by the attorney-client privilege waives the privilege as to the portion disclosed and to all other communications relating to the same subject matter. *Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) (citing *In re Sealed Case*, 877 F.2d 976, 980-81 (D.C. Cir. 1989)). However, the work product doctrine is "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225,

238 n.11 (1974). Work product immunity furthers the client's interest in obtaining complete legal advice and creates "a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *Hickman*, 329 U.S. at 511. It advances the adversarial system by providing incentives to collect information and thoroughly prepare for litigation.

In determining whether the government impliedly waived work product immunity for the documents API seeks, we determine whether the "specific assertions of privilege are reasonably consistent with the purposes for which" the privilege was created. *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982). Accordingly, "disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character." 8 Wright & Miller, Federal Practice & Procedure, § 2024; *Williams & Connolly*, 662 F.3d at 1244; *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997); *Sealed Case*, 676 F.2d at 818; *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222 (4th Cir. 1976).

With respect to this case, there is no doubt that the government waived work product immunity for the portions of the documents it did use in the two consent decrees. Those citations "substantially increased the opportunities for potential adversaries to obtain the information," thereby eliminating any interest the government had in keeping the information from API. Wright & Miller, *supra*, § 2024; *see Brown v. Trigg*, 791 F.2d 598, 601 (7th Cir. 1986) (immunity waived by testifying about material at a previous hearing). But the

government has already provided API with that information.[3]

In doing so, however, the government did not "expose[] the enchanted nature" of the information API now seeks. *See Sealed Case*, 676 F.2d at 817 (internal quotation mark omitted). In keeping the material privileged, there is nothing inconsistent with the immunity's purpose, which encourages litigants like the United States to prepare reports like the Amendola Report. This practice provides courts with additional information and facilitates the truth-seeking process. Ruling as API asks us could have two deleterious effects that are inconsistent with the immunity's purpose. First, it may discourage the government from settling with PRPs for fear that in entering consent decrees, it would have to release all related information to parties it wants to take to trial. *See Metro. Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980) ("The law generally favors and encourages settlements.").

---

[3] This explains API's misplaced reliance on *Goodrich Corp. v. U.S. EPA*, 593 F. Supp. 2d 184 (D.D.C. 2009). There, the court relied on policy considerations and found that the EPA's disclosure of a model in a public presentation waived the right to the underlying report. However, the court noted that the EPA had already disclosed the "gist" of the information it sought to exempt from the FOIA request. *Id.* at 191. More importantly, Goodrich claimed waiver "for a single document," in contrast to what API seeks here—an "open-ended list of all documents related to a certain subject" of which the United States has not revealed the "gist." *Cf. id.* at 192.

Additionally, finding waiver is inconsistent with *Hick-man*'s central tenet—by requiring the government to disclose all material related to documents it used we would discourage creating drafts and supporting documentation in the first place. 329 U.S. at 511 ("Were such materials open to opposing counsel . . . much of what is now put down in writing would remain unwritten."). Although the government no longer has an interest in withholding the information made public in the consent decrees, it still has an interest in benefiting from its preparation of the other information it can use in future litigation. This interest is at the core of the work product rule. Therefore, we do not find waiver of the documents the government has neither used nor released to API.

This conclusion is consistent with other cases. First, in *Duplan*, the Fourth Circuit upheld the district court's conclusion that documents related to previously disclosed material remained protected. 540 F.2d at 1222. It held that forcing disclosure of related material would create "harsh results . . . conceivably causing wholesale production of all work product documents from . . . a lawsuit whenever production of any work product document is considered a waiver." *Id.* The waiver exception would swallow the rule: "The net effect of such a rule would result in great reluctance to produce any work product documents for fear that it might waive the immunity as to all similar documents." *See id.* We want to encourage creating these documents, but we also want to encourage voluntary disclosure of certain information. API's argument would render these goals mutually exclusive.

Similarly, in *Nobles*, the defense sought to impeach prosecution witnesses with an investigatory report its agent made about those witnesses. 422 U.S. at 228. The Court rejected the defendant's argument that the whole report was protected. It held that the portions relied upon by the agent were unprotected, but it "excise[d] all reference to matters not relevant to the precise statements at issue." *Id.* at 228-29. *Nobles* historically stands for the earlier proposition that a party cannot shield the material on which its witnesses rely. But it also supports the inverse—partial reliance only "waive[s] the privilege with respect to matters covered" by the witness. *Id.* at 239. Undisclosed work product remains protected.

API seeks to overcome this rule with a series of unavailing policy arguments. For instance, API argues that the "district court's holding allows the government an unfair advantage." API argues the district court erred by "allowing the [g]overnment to use the portions of the consultant's opinions that it believes are helpful, while hiding the analysis and the complete opinions from the public view." But these sorts of fairness concerns are not relevant to a FOIA inquiry. We determine whether the material would normally or routinely be discoverable in litigation on a showing of relevance, *Grolier*, 462 U.S. at 26—not whether interests in a particular suit or to a particular litigant can override a privilege in a particular case, *Sears*, 421 U.S. at 149 n.16.

API cannot make this argument in a FOIA case; it must make it in actual litigation. Federal Rule of Evidence 502

governs such situations where a party unfairly discloses only a portion of privileged material. This Rule "abolishe[d] the dreaded subject-matter waiver, i.e., that any disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter." *Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 11 (D.D.C. 2010). Instead, waiver occurs only when disclosure is (1) intentional, (2) the disclosed and undisclosed material concern the same subject matter, and (3) fairness requires considering the material together. Fed. R. Evid. 502(a). Determining whether the undisclosed material ought to be considered with the disclosed material requires a case-specific analysis of the subject matter and adversaries. *See* Fed. R. Evid. 502 Advisory Committee Notes. These considerations go beyond the purview of FOIA requests. *See Grolier*, 462 U.S. at 26.

API's real complaint seems to be the district court's denial of its discovery request in the Georgia-Pacific consent decree. Perhaps API should have overcome the privilege in that matter. But that decision has no bearing on this case. The district court rejected the request and approved the consent decree. More importantly, to the extent API (or another party) fears that the government will use the newer numbers against it in future litigation, Rule 26 requires disclosure before trial. Fed. R. Civ. P. 26(a)(2). FOIA is not a substitute for discovery.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.