In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1750

J. DONALD HENSON, SR.,

*Plaintiff-Appellant*,

*v.*

DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 14-CV-908 — **David R. Herndon**, *Judge*.

SUBMITTED MARCH 9, 2018[*] — DECIDED JUNE 15, 2018

Before WOOD, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff J. Donald Henson, Sr., appeals from the district court's grant of summary judgment

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See Fed. R. App. P. 34 (a)(2)(C).

for defendants on his claims under the Freedom of Information Act, 5 U.S.C. § 552. We affirm.

Under the Food, Drug, and Cosmetics Act, "Class III" medical devices are those that support or sustain human life, that are of substantial importance in preventing impairment of human health, or that present a potential, unreasonable risk of illness or injury. See *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317 (2008); 21 U.S.C. § 360c(a)(1)(A). Class III devices must undergo scientific and regulatory review before they are marketed. See 21 U.S.C. § 360e; 21 C.F.R. §§ 814.1 et seq.

Plaintiff Henson sent the Food and Drug Administration requests under the Freedom of Information Act seeking documents related to the premarket approval process for a glucose monitoring system. The agency produced documents responsive to Henson's requests. He was not satisfied with the response, so he sued, alleging that the agency failed to satisfy its obligations under the Freedom of Information Act. The agency then reprocessed Henson's requests and provided him with responsive documents totaling 8,000 pages.

In his amended complaint, Henson alleges that he is diabetic, that he had observed 14 deficiencies with his own glucose monitor, and that he contacted the agency to relay his concerns. Henson says that, after speaking with the Ombudsman for the Center for Devices and Radiological Health ("CDRH"), the branch of the FDA responsible for overseeing the premarket approval process, he sent the agency 46 requests for documents related to the premarket approval process for the glucose monitor. Henson also sent ten letters, labelled sequentially from "R-1" to "R-10," that he contends were new requests, but none of those letters was answered. The FDA eventually provided Henson with more than 7,000

pages in response to his requests. Henson then called and wrote to two FDA employees, insisting that the agency was withholding documents to which he was entitled. But Henson's calls and letters went unanswered. In his complaint, he named the agency and the two agency employees as defendants. He also attached two summaries detailing the requests that he made to the agency. Henson asked the court to order the production of the withheld documents.

On the defendants' motion, the district judge dismissed the two agency employees from the case, concluding that the Act "does not create a cause of action for a suit against an individual employee of a federal agency." A magistrate judge then granted the agency's request for a stay of discovery because cases under the Act generally proceed to discovery only after a plaintiff's case survives a motion for summary judgment. Rather than move for summary judgment, however, the agency asked the court to stay the case so it could reprocess Henson's requests by conducting a new search for responsive documents. The agency said it would give Henson documents responsive to his requests on a rolling basis and a so-called *Vaughn* index—a list of each redacted or withheld document cross-referenced with the exemption that the agency asserts is applicable. See *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 n.3 (7th Cir. 1998); *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). The court granted the stay.

After the agency had reprocessed Henson's requests, the court lifted the stay and the agency moved for summary judgment. The agency argued that it had conducted a reasonable search for all documents responsive to Henson's requests and that it had properly withheld and redacted documents pursuant to the exemptions to disclosure listed in 5 U.S.C.

§ 552(b)(4)–(6). In support of its motion, the agency provided the affidavits of two employees: Sarah Kotler, the agency's Director of the Division of Freedom of Information, and William Holzerland, the Director of the Division of Information Disclosure for the CDRH. Their affidavits detailed the following information: The two directors sent documents in response to 18 of Henson's requests and to some of his letters. They did not respond to the remainder, including Henson's letters, because the requested materials were either outside of the Act's scope, duplicative of Henson's other requests, or available on the agency's website. The agency also appended to its motion tables describing the 18 requests and Henson's "R" letters, the scope of the search undertaken by the agency, and the production following the stay. The affidavits also described why the agency had redacted records pursuant to certain of the Act's exemptions to disclosure. The defendants did not file with their motion for summary judgment the *Vaughn* indices themselves. The agency later said it withheld them so as not to burden the district court.

Judge Herndon granted summary judgment for the defendants. He first determined that the affidavits established that the agency performed an adequate search for the documents requested by Henson. The judge also concluded that the agency had applied the Act's exemptions correctly to withhold or redact documents: exemption 4 for trade secrets relating to the raw materials used to manufacture the glucose monitor, the raw materials used in the testing process, and the pump's battery film; exemption 5 for "pre-decisional and deliberative" agency documents; and exemption 6 for documents that identified patients who had reported feedback to the agency or the manufacturer of the glucose monitor and

those patients' medical histories, as well as agency employees' cell-phone numbers and the personal email addresses of the manufacturer's employees. See § 552(b)(4)–(6).

On appeal, Henson raises three challenges. First, he argues that the district court should not have dismissed one of the agency employees as a defendant. He contends the disciplinary provisions of § 552(a)(4)(F) cannot be enforced unless individual agency employees are proper defendants under the Act. Second, he argues that the magistrate judge erred by staying the case pending the agency's motion for summary judgment. Third, Henson argues generally that the district court erred in granting summary judgment on the merits. We address these arguments in turn.

First, we agree with the district court that the Act does not authorize suits against the individuals named in Henson's complaint. Under 5 U.S.C. § 552(a)(4)(B), "on complaint, the district court . . . has jurisdiction to enjoin *the agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant." (Emphasis added.) The statute defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—(A) the Congress; (B) the courts of the United States; (C) the governments of the territories or possessions of the United States; (D) the government of the District of Columbia." 5 U.S.C. § 551(1). An individual employee is not an "agency" as defined by the Act. The district court properly dismissed the claims against the two agency employees.

Henson resists this conclusion by arguing that § 552(a)(4)(F) allows suits against individuals. That provision

allows the court, when ordering the production of records, to question whether agency personnel have acted arbitrarily or capriciously and whether discipline is warranted. But under the statute, the issue of any discipline is left to the agency, not a court. See *id*. We agree with our colleagues in other circuits that a plaintiff may not sue an individual agency employee for violating the Freedom of Information Act. See *Drake v. Obama*, 664 F.3d 774, 785–86 (9th Cir. 2011); *Batton v. Evers*, 598 F.3d 169, 173 n.1 (5th Cir. 2010); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (noting that Privacy Act and Freedom of Information Act "concern the obligations of agencies as distinct from individual employees of those agencies"); see also *Bavido v. Apfel*, 215 F.3d 743, 747 (7th Cir. 2000) (stating that Privacy Act authorizes suits against only agencies, not individuals).

Second, the magistrate judge did not err by staying discovery and setting a briefing schedule for summary judgment. Henson argues that the judge's decision constituted an improper order "directing" the agency to file a motion for summary judgment. He also contends that the judge lacked authority to set a briefing schedule because no written referral from the district judge exists in the record.

We do not understand the magistrate judge's order as Henson does. The magistrate judge reasoned that, in cases under the Freedom of Information Act, it is prudent to entertain summary-judgment motions before discovery. The magistrate judge's decision to grant the stay and set a briefing schedule was within his considerable discretion to manage the court's docket to ensure the "just, speedy, and inexpensive" resolution of this case. See Fed. R. Civ. P. 1, 6(b); *Dietz*

*v. Bouldin*, 136 S. Ct. 1885, 1891–92 (2016); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). Also, the lack of a more specific written referral to the magistrate judge does not matter here. The district court's local rules establish that most non-dispositive pretrial civil motions, including motions to stay discovery, are to be handled by a magistrate judge. See S.D. Ill. Civ. L.R. 72.1(a)(1); see also 28 U.S.C. § 636(b)(1)(A).

Third, we turn to the merits of the district court's grant of summary judgment. Henson disputes both the adequacy of the agency's search and the applicability of the Act's exemptions 4, 5, and 6 in this case.

We begin with whether the agency's search was adequate, a question that we review *de novo*. See *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 388 (7th Cir. 2015). To prevail on summary judgment on a claim under the Act, the agency must demonstrate that there is no genuine issue of material fact about the adequacy of its search. See *id.* at 387. An agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*, quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Good faith is presumed, and it can be reinforced by evidence of the agency's attempts to satisfy the request. See *id.* To support an agency's assertion that it conducted a reasonable search, the agency may offer non-conclusory affidavits. See *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992). The affidavits must be reasonably detailed, set forth the search terms used in electronic searches and the kind of search performed by the agency, and aver that all files

likely to contain responsive documents were searched. See *Rubman*, 800 F.3d at 387, quoting *Oglesby*, 920 F.2d at 68.

The undisputed facts show here that the agency's search for responsive documents was reasonable. Holzerland's affidavit establishes that the agency searched its database by the premarket-approval number assigned to the glucose monitor Henson inquired about. The agency also had the recipients of Henson's letters and those representatives with whom Henson had met search their files for responsive documents. Kotler attested that, in response to Henson's request for documents about a meeting he had with the agency's general counsel, the general counsel searched his files. Other documents responsive to Henson's requests of the ombudsman were identified, Kotler described, through a search of files. Kotler also detailed how Henson's other requests were handled in a similar manner. The agency also provided Henson with responsive documents after reviewing the documents and creating a *Vaughn* index. Henson has no basis for suggesting that these were not reasonable efforts to locate responsive documents to his many (and often repetitive) requests. We agree with the district court that the agency undertook a search reasonably calculated to uncover all relevant documents.

We next turn to whether the agency properly withheld or redacted documents pursuant to the Act's exemptions. We examine *de novo* whether the district court had an adequate factual basis for its decision. See *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995). That inquiry depends on factors such as the specificity of the agency's affidavits, whether the judge reviewed the documents *in camera*, and whether the judge reviewed the *Vaughn* indices. See *id.*; *Rubman*, 800 F.3d at 388; *Solar Sources*, 142 F.3d at 1038–39; *Becker v. I.R.S.*, 34 F.3d 398,

402 (7th Cir. 1994). If a sufficient factual basis for the decision exists, then we review the conclusion for clear error. See *Appleton Papers, Inc. v. Environmental Protection Agency*, 702 F.3d 1018, 1022 (7th Cir. 2012). Therefore, while we examine closely whether the district judge had an adequate factual basis for his conclusion that an exemption applies, we do not conduct a *de novo* review of each finding. See *Rubman*, 800 F.3d at 388. Henson challenges both the adequacy of the factual basis and the applicability of exemptions 4, 5, and 6.

Henson's challenge to the adequacy of the judge's factual basis fails. Henson had the agency's *Vaughn* indices yet did not point to specific claims of exemption with which he disagreed. Neither Henson nor the agency filed the indices with the district court. And although Henson argued in the district court that the agency did not narrowly construe the exemptions to the Act's disclosure mandate, as it is required to do, see *Patterson*, 56 F.3d at 835–36, he never provided the judge with the indices or pointed to specific entries that purportedly showed that the agency improperly redacted documents. Having failed to provide the *Vaughn* indices to the court, plaintiff cannot complain here for the first time that the judge did not have an adequate factual basis to decide the agency's claims of exemption. See *Allen v. City of Chicago*, 865 F.3d 936, 944–45 (7th Cir. 2017).

The district court would have had a stronger factual basis for its decision if the judge had reviewed the *Vaughn* indices or conducted an *in camera* review of at least a reasonable sample of the documents. See, e.g., *Solar Sources*, 142 F.3d at 1038 (noting that "we might give some weight to the appellants' argument" that a factual basis was not established by the gov-

ernment's affidavit had judge not conducted *in camera* review); *Becker*, 34 F.3d at 402 (concluding that judge's decision rested on adequate factual basis when judge reviewed documents *in camera* and reviewed *Vaughn* indices).

Still, this is an adversary process. Henson was in the better position to focus the judge on the contested issues. He had the ability to identify which redactions he believed were unsupported, rather than objecting generally, as though every entry in the *Vaughn* indices gave insufficient grounds for redaction. Rather than ask a busy district judge to examine documents (in this case Henson asked the judge to examine over 67,000 documents) or to parse the *Vaughn* indices as an original matter, it is better to put the burden on the plaintiff to identify with particularity the claims of exemption he was challenging, at least where the *Vaughn* indices appear facially adequate, as they do here.

We recognize that the burden remains on the government to justify decisions not to disclose information, see 5 U.S.C. § 552(a)(4)(B). Insofar as we are concerned with the district judge's basis for his decision, the agency met its burden because it provided detailed affidavits in support of its decision to redact information. See *Rubman*, 800 F.3d at 388. Moreover, the agency produced *Vaughn* indices and furnished them to Henson.

In this appeal, as a precautionary step, we opted to order the agency to file the indices in this appeal. That is not how future cases should proceed as a matter of course. Rather, if *Vaughn* indices are created (they are not required in every case, see, e.g., *Solar Sources*, 142 F.3d at 1039–40), the plaintiff or the government should file the indices with the district court and, if warranted, with a request to seal them. If the

plaintiff wishes to claim that the government has claimed in-applicable exemptions to disclosure, the plaintiff should identify specifically which ones are disputed. In some cases, perhaps, indices might be so opaque that it would be impossible for the plaintiff to identify which entries in the indices are contested. In other cases, the plaintiff might argue that none of the withheld information is exempt from disclosure. In those cases, if the plaintiff has been given a copy of the indices, they should be filed with the court and the plaintiff should explain why he or she cannot narrow the scope of the dispute. We deviated from the ordinary procedure here to ensure that the indices provided Henson with a basis for objecting in a specific manner to the agency's claims of exemption. They did, so we conclude that Henson needed to specify in the district court which redactions he thought improper.

Because Henson's challenge to the judge's factual basis fails, we next examine whether the judge clearly erred in upholding the agency's claims of exemption. We find no clear error.

The judge found that the agency properly invoked exemption 4 to withhold "information relating to the raw material used in the manufacturing process, raw material used in the testing process, and the pump's battery film." Exemption 4 protects from disclosure "matters that are … trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). We have suggested that this exemption applies when disclosing the contested information would cause "substantial competitive harm to the firm that owns the information." *General Elec. Co. v. NRC*, 750 F.2d 1394, 1402–03 (7th Cir. 1984), citing *National Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 681–84 (D.C.

Cir. 1976). The Act does not define "trade secret," and there is some disagreement about the scope of this exemption. See *New Hampshire Right to Life v. Dep't of Health and Human Servs.*, 136 S. Ct. 383 (2015) (Thomas, J., dissenting from denial of certiorari); *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 944 (10th Cir. 1990) (adopting definition of "trade secret" narrower than agency's definition); see also 18 U.S.C. § 1839(3) (defining "trade secret" for purposes of criminal law). We do not decide which approach is best here because Henson's challenge fails under every approach.

We see no clear error in the judge's determination that the materials used to manufacture the glucose monitor and its battery film were exempt from disclosure as trade secrets or were otherwise confidential. Henson provided no evidence to the district judge contradicting Holzerland's declaration that the agency redacted information relating to the materials used to make the monitor and its battery film. The *Vaughn* indices confirm that the agency limited its redactions pursuant to exemption 4 to these kinds of information. There is no evidence that the manufacturer of the glucose monitor disclosed the information that the agency redacted, nor is there evidence that the raw materials do not have economic value by virtue of remaining confidential. Because there is no evidence that the materials used to make the monitor and the battery film have been made public, there is no reason to doubt that substantial competitive harm could befall the manufacturer if that information were released to the public.

The district judge also did not clearly error in finding that exemption 5 applied to the agency's pre-decisional and deliberative documents and communications protected by the at-

torney-client privilege. Exemption 5 allows an agency to with-hold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates the attorney-client privilege and the work-product privilege. See *Appleton Papers*, 702 F.3d at 1022; *Becker*, 34 F.3d at 403 n.15. The affidavits provided by the agency set forth the categories of information that were redacted, and the *Vaughn* indices detail on an individual basis the topics discussed by the agency's employees and the purposes for the communications. Henson did not contradict any of the agency's representations, so we see no clear error.

Finally, there was no clear error in the judge's determination that the agency properly applied exemption 6, which excuses the disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under exemption 6, the court must balance an individual's right to privacy against the Act's policy of opening agency action to the light of public scrutiny. See *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991).

Based on the affidavits provided to the district court and the *Vaughn* indices, the agency redacted medical information about the manufacturer's patients and the contact information for employees of the manufacturer and the agency. We agree with the district court that this information was protected by exemption 6 because the revelation of personal identifying information tips the scales in favor of non-disclosure. See *id.* at 175–76; *U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 350 (7th Cir. 1992) (names and home addresses protected from disclosure by exemption 6). Moreover, the Act

requires transparency from the government—not the manu-facturer's patients and employees. See *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 774–75 (1989).

The judgment of the district court is AFFIRMED.