SOLAR SOURCES, INC. and Amax Coal
Company, Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 97–2386.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1997.

Decided April 28, 1998.

G. Daniel Kelley, Edward Steegman (argued), Ice, Miller, Donadio & Ryan, Indianapolis, IN, for Plaintiffs–Appellants. Jeffrey L. Hunter, Office of the U.S. Attorney, Indianapolis, IN, Leonard Schaitman, John P. Schnitker (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, for Defendant–Appellee.

Before CUDAHY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Since 1992, the United States Department of Justice's Antitrust Division has been investigating a wide-ranging price fixing conspiracy among participants in the commercial explosives and ammonium nitrate industries. The appellants, who are plaintiffs in a civil suit related to this conspiracy, filed a Freedom of Information Act request with the Antitrust Division to disclose certain documents related to its investigation. Specifically, the appellants sought documents related to the criminal investigations of three corporations and one individual who have already pleaded guilty to price fixing charges. The Government withheld the information, claiming that disclosure reasonably could be expected to interfere with its ongoing investigation. Seeking an injunction to require production of the documents, the appellants filed suit in the district court which, following an *in camera* review of randomly selected documents, awarded summary judgment to the Government. We affirm.

## I.

Along with other plaintiffs, Solar Sources, Inc. and Amax Coal Company are currently pursuing civil antitrust claims arising out of a price fixing conspiracy in the commercial explosives and ammonium nitrate industries. Their suit (the *Arch Minerals* litigation), was filed in the Southern District of Indiana. In August 1996, the Judicial Panel on Multidistrict Litigation transferred the case for all pretrial matters to the District of Utah. The *Arch Minerals* litigation is presently in the pretrial stage.

On September 25, 1995, the appellants filed a request seeking disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, of "all documents relating to investigations or proceedings" in four criminal antitrust cases arising out of the Government's commercial explosives price fixing investigation. The defendants in these four cases—ICI Explosives USA, Inc.; Dyno Nobel, Inc.; Mine Equipment & Mill Supply, Inc.; and Withers Waller Caldwell, Jr., an officer for ICI—had pleaded guilty to criminal charges filed against them in the Northern District of Texas. The three corporate defendants are also some, but not all, of the defendants in the *Arch Minerals* litigation; the appellants made their FOIA requests in furtherance of their civil case.

Although the Government has concluded its criminal proceedings against the four defendants named in the appellants' FOIA request, the Antitrust Division's investigation is ongoing.[1] Therefore, after releasing 96 pages of publicly-filed documents from the four concluded cases, the Government refused to disclose any other information related to its ongoing investigation. The Government rested its refusal to the FOIA request on Exemption 7(A), which excludes "records or information compiled for law enforcement purposes" to the extent that production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The appellants then filed

---

1. In its brief to the Court, the Government states that subsequent to the appellants' September 1995 FOIA request, it has secured eleven additional indictments, all resulting in guilty pleas, as well as fines exceeding $11 million. After submitting its brief to the Court, the Government secured indictments of three corporate officers involved in the conspiracy. One of the three men has pleaded guilty to conspiracy charges; the other two are set to stand trial.

suit in the district court, seeking an injunction to require disclosure of the requested information.

The Government filed a motion for summary judgment, asserting that the requested documents properly were withheld under Exemption 7(A). In support of its motion, the Government submitted a signed declaration from Ann Lea Harding, Chief of the FOIA Unit for the Antitrust Division. The declaration explained the nature of the Division's ongoing criminal investigation, as well as the manner in which the appellants' FOIA request was processed. Harding's declaration then explained that the information that was responsive to the appellants' request constituted 1763 linear feet of documents, as well as over seventy million bytes of computerized information. The declaration stated that all of the requested information fell into one or more of the following categories: (A) correspondence between individuals or entities and the Antitrust Division regarding grand jury subpoenas issued by the Division in its investigation of the explosives industry; (B) documents submitted by various individuals or entities pursuant to grand jury subpoenas served upon them; (C) various documents or pleadings filed under seal, internal Division material related to grand jury management, and other internal Division memoranda; (D) transcripts and summaries of grand jury testimony and exhibits; (E) various documents stored only in computer form, including internal Justice Department memoranda regarding the investigation, indices of all documents and databases, outlines for proposed grand jury testimony, lists, and summary charts; and (F) computerized databases of selected portions of the information already listed above. Category B, which consisted of more than five million pages of material, comprised the vast majority of the documents.

More specifically, Harding asserted that all of the information fell into at least one of the following subcategories: (1) details concerning allegations that gave rise to the investigation; (2) statements or interviews of witnesses, subjects, and targets; (3) details about the progress of the investigation; (4) confidential business information; (5) leads to future interviews and targets of grand jury subpoenas; (6) details about the conduct that led to the guilty pleas by the subjects of the appellants' FOIA request and similar information about individuals and firms that have not yet been charged; (7) Division analyses and recommendations; and (8) offers of settlement and negotiations concerning sentences and fines. Harding's declaration further explained that the categories were not mutually exclusive; for example, category B contained information attributable to subcategories 1, 2, and 4 through 6. The declaration further explained that disclosure of the withheld information would chill third parties from disclosing confidential business information that is necessary to the investigation and allow potential defendants to alter or destroy yet-undiscovered evidence, to intimidate or retaliate against witnesses, and to determine the scope and direction of the Government's investigation.

■ The district court determined that it needed more information regarding the withheld documents to determine the propriety of the Government's assertion of Exemption 7(A).[2] The court declined to require that the Government compile a *Vaughn* index.[3] The court determined that it would review specified selections of the withheld documents *in camera*. Pursuant to the court's instructions, the Government produced documents from categories A through D selected from randomly-chosen specified locations in the Government's files. The Government produced approximately 3000 pages for the court's *in camera* review, along with an in-

---

**2.** While the Government asserted that it could withhold all the documents under Exemption (7)(A), it also asserted that other exemptions— including Exemptions 3, 4, 5, and 7(D)—could apply to portions of the withheld documents. *See* 5 U.S.C. § 552(b). The Government reserved the right to assert those exemptions if the district court rejected its 7(A) exemption claim.

**3.** A *Vaughn* index is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable. *See Wright v. OSHA*, 822 F.2d 642, 645 (7th Cir.1987); *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

dex of the sample documents that explained why they satisfied Exemption 7(A). The Government also explained that of the 3000 pages that it had provided the court, 15 documents totaling 26 pages could be released to the appellants. However, the Government argued that this small percentage (less than one percent) was not "reasonably segregable" from the responsive documents and that it was therefore not required to produce the estimated one percent of disclosable pages out of the total of over five million. *See* 5 U.S.C. § 552(b).

Following its thorough *in camera* review of the selected documents, the district court found that the Government had properly withheld the documents under Exemption 7(A). The court found that "producing the requested documents to plaintiffs in this case reasonably could be expected to interfere with ongoing enforcement proceedings" and that it was "satisfied from its inspection of the random documents that it is impossible for the Division to separate, from the more than 5,000,000 pages of documents and the more than 70,805,509 bytes of computerized data, information that is applicable only to those defendants named in the plaintiffs' FOIA request."[4] Thus, the court awarded summary judgment to the Government.

## II.

■■■ The Freedom of Information Act generally contemplates a policy of broad disclosure of government documents, and serves the basic purpose of "ensur[ing] an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). However, Congress has structured various exemptions from the FOIA's disclosure requirements in order to protect certain interests in privacy and confidentiality. In enacting Exemption 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case." *Id.* at 224, 98 S.Ct. at 2318. While we must therefore give "meaningful reach and application" to the Exemption, *see John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989), we must also take care to construe the Exemption narrowly given the general policy favoring disclosure, *see Kimberlin v. Department of the Treasury*, 774 F.2d 204, 206 (7th Cir.1985) (per curiam). Accordingly, the Government bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption. *See, e.g., Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir.1995).

■■■ Exemption 7(A) does not permit the Government to withhold all information merely because that information was compiled for law enforcement purposes. Instead, "an agency seeking to shield records or information behind [the Exemption] must show that disclosure could reasonably be expected perceptibly to interfere with an enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C.Cir.1989) (R.B. Ginsburg, J.). The Government need not establish that release of a particular document would *actually* interfere with an enforcement proceeding. Rather, "the government need show only 'that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.'" *Wright v. OSHA*, 822 F.2d 642, 646–47 (7th

---

4. The court also found that the Government was justified in withholding the category D documents-grand jury testimony and exhibits—under FOIA Exemption 3, which permits withholding information that is "specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The court held that Federal Rule of Criminal Procedure 6(e) generally prohibits disclosure of grand jury materials, and that any request for disclosure must be filed in the Northern District of Texas, where the grand jury is convened. See Fed.R.Crim.P. 6(e)(3)(D) ("A petition for disclosure ... shall be filed in the district where the grand jury convened."). We have held that Rule 6(e) is a "statute" for the purposes of this FOIA exemption. *See Silets v. Department of Justice*, 945 F.2d 227, 230 (7th Cir.1991) (en banc), *cert. denied*, 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992).

Cir.1987) (quoting *Robbins Tire*, 437 U.S. at 236, 98 S.Ct. at 2324). It is accordingly well-established that the Government may justify its withholdings by reference to generic categories of documents, rather than document-by-document. *See, e.g., Robbins Tire*, 437 U.S. at 236, 98 S.Ct. at 2324; *Walsh*, 881 F.2d at 1097 n. 10.

■ We review a district court's determination on summary judgment with respect to a FOIA request by determining whether the district court had an adequate factual basis to make its decision and, if so, whether its decision was clearly erroneous. *See, e.g., Becker v. IRS*, 34 F.3d 398, 402 (7th Cir. 1994); *Wright*, 822 F.2d at 645.[5] The appellants hint that the court did not have an adequate factual basis to make its determination. They argue that the broad categories of documents constructed by the Government—particularly the more than five million pages included in category B—do not provide the type of functional descriptions that would enable the district court to determine whether disclosing documents would interfere with enforcement proceedings. *See, e.g., Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 312 (D.C.Cir.1988) (recognizing that "it is not enough for an agency to shore up its exemption claim merely with general and conclusory statements regarding the effect of disclosure"). Although the "subcategories" delineated in Harding's declaration may have provided a sufficient factual basis for the court's decision, we might give some weight

to the appellants' argument had the district court not conducted a thorough *in camera* review. However, because of the manner in which Judge Dillin structured and conducted this review, we are satisfied that he had a sufficient factual basis for his decision.

■ The district court in this case was presented with the monumental task of reviewing the denial of a FOIA request comprising millions of pages of documents. The appellants attack the Government's record-keeping system itself, which they argue effectively allows the Government "to repeal the FOIA by dint of its own improvidence." However, they have not argued that any of the information was not compiled for law enforcement purposes, and it is "firmly established that an agency is not required to reorganize [its] files in response to [a plaintiff's] request in the form in which it was made." *Church of Scientology v. IRS*, 792 F.2d 146, 150–51 (D.C.Cir.1986) (Scalia, J.) (alterations in original) (internal quotations omitted); *see also Miller v. Department of State*, 779 F.2d 1378, 1385 (8th Cir.1985) (recognizing that "the filing system which an agency uses is designed in most instances to serve its internal needs; in responding to a FOIA request, the agency is required to make a diligent effort calculated to uncover the requested document but need not restructure its entire system in order to satisfy the request"). Given the number of documents in dispute, the district court obtained a random sample of the documents and care-

---

5. As we noted in *Becker*, there exists "some tension" between the de novo standard of review that we commonly employ in our review of a district court's award of summary judgment and the standard that we employ in reviewing a district court's FOIA exemption determinations. *See* 34 F.3d at 402 n. 11. The District of Columbia Circuit, which at one point applied the clearly erroneous standard, *see Mead Data Cent., Inc. v. United States Dept. of Air Force*, 566 F.2d 242, 251 n. 13 (D.C.Cir.1977), presently applies "the same standard of appellate review applicable generally to summary judgments." *Petroleum Info. Corp. v. Department of the Interior*, 976 F.2d 1429, 1433 (D.C.Cir.1992) (R.B. Ginsburg, J.); *see also Burka v. Department of Health and Human Sevices*, 87 F.3d 508, 514 (D.C.Cir.1996). The Ninth Circuit, on the other hand, presently employs a two-step standard of review. *See Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996) (recognizing that in a FOIA case it is not

necessary to inquire whether there is a genuine issue of material fact because "the document says whatever it says"). That Circuit first determines "whether the district court had an adequate factual basis upon which to base its decision." *See Minier v. CIA*, 88 F.3d 796, 800 (9th Cir.1996). If so, the court will only overturn the factual findings of a district court if they are clearly erroneous, but it reviews de novo the district court's conclusion regarding an exemption's applicability. *See Schiffer*, 78 F.3d at 1409. For further discussion regarding this disagreement among the circuits, *see Sheet Metal Workers v. Department of Veterans Affairs*, 135 F.3d 891, 896 n. 3 (3d Cir.1998). Although the Government has urged us to adopt the *de novo* standard, we continue to believe that the clearly erroneous standard remains appropriate in light of the unique circumstances presented by FOIA exemption cases.

fully reviewed them in light of the claimed exemptions. We believe that this *in camera* review, when combined with the sworn declaration from Chief Harding, a government official, provided the district court with a sufficient factual basis to determine that the documents were properly withheld. *Cf.* *Becker*, 34 F.3d at 402.

 Moreover, we are satisfied that the district court's conclusion that the material is exempt from disclosure under 7(A) is not clearly erroneous. The Government explained to the court a number of ways in which disclosure could interfere with its ongoing criminal investigation. Public disclosure of information could result in destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation. *See Robbins Tire*, 437 U.S. at 241, 98 S.Ct. at 2326 (recognizing that "even without intimidation or harassment a suspected violator with advance access ... could construct defenses which would permit violations to go unremedied") (internal quotations omitted). While the appellants in the instant case are apparently not targets of the Government's investigation, public disclosure of information under the FOIA would presumably be available to the public as a whole, including targets of the investigation.[6] Accordingly, we hold that the district court's determination that the material was properly exempt from disclosure under 7(A) was not clearly erroneous.

 We also conclude that the district court did not clearly err in finding that the small percentage of documents that could otherwise be disclosed—less than one percent of the documents reviewed *in camera*— are not reasonably segregable from those documents that were properly withheld. The FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). We have already recognized the principle that government agencies need not organize their records for the purpose of FOIA compliance. Given this principle, we believe that the statute makes clear that courts should not order segregation when such a process would be significantly unwieldy. *See Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 86 (2d Cir.1979) ("[I]f the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not 'reasonably segregable.'"). Based upon the documents prepared by the Government for the court's *in camera* review, the Government estimated that it would require eight work-years to identify all of the non-exempt documents in its investigatory files. Imposing this burden upon the Government, as well as the reviewing courts, would conflict with the "practical approach" that courts have taken in interpreting the Act. *See John Doe Agency*, 493 U.S. at 157, 110 S.Ct. at 477–78.

### III.

 The appellants raise several additional arguments attributing error to the district court's methodology and holding. First, they argue that the court erred in not requiring the Government to file a *Vaughn* index or, alternatively, by not allowing them to review the Government's *in camera* submis-

---

6. In this context, the appellants argue that the district court could issue a "protective order" that would limit the use of the disclosed documents, perhaps shielding the documents from potential targets of the Government's investigation. This argument, however, misapprehends the FOIA's basic principle of *public* access to government documents. The identity of an individual requesting documents under the FOIA, or the reasons for an individual's request, are simply not relevant to the merits of a FOIA request. *See, e.g., Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) ("The Act's sole concern is with what must be made public or not made public."). Though the appellants state that a FOIA "protective order" would be no different than protective orders frequently entered in the course of "ordinary civil discovery", this comparison ignores the Supreme Court's "observations that the FOIA was not intended to supplement or displace rules of discovery." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989).

sions. In *Wright v. OSHA*, 822 F.2d 642, 646 (7th Cir.1987), we indicated that a detailed *Vaughn* index is generally not required in Exemption 7(A) cases. Given the fact that Exemption 7(A) does not require the Government to establish that each particular document would interfere with enforcement proceedings, but rather permits generic exemptions of categories of documents, *see Robbins Tire*, 437 U.S. at 236, 98 S.Ct. at 2324, courts have recognized that a *Vaughn* index requirement in a 7(A) case would make little sense: "When ... a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile." *Church of Scientology v. IRS*, 792 F.2d 146, 152 (D.C.Cir.1986) (Scalia, J.); *see also In re Department of Justice*, 999 F.2d 1302, 1309 (8th Cir.1993) (en banc) ("[U]nder *Robbins Tire*, Exemption 7(A) does not require that the government produce a fact-specific, document-specific, *Vaughn* index in order to satisfy [its] burden. The contents of the requested documents are irrelevant. It is the particular categories of documents ... on which the court must focus."), *cert. denied*, 510 U.S. 1163, 114 S.Ct. 1186, 127 L.Ed.2d 537 (1994). Further, in many Exemption 7(A) cases, provision of a *Vaughn* index would itself disclose much of the information that the Exemption is intended to protect. *See, e.g., Curran v. Department of Justice*, 813 F.2d 473, 475 (1st Cir.1987) ("Provision of the detail which a satisfactory *Vaughn* Index entails would itself probably breach the dike."). Therefore, we conclude that the district court did not err by not requiring the Government to produce the index.

■ We also do not believe that the district court erred by denying the appellants a review of the *in camera* documents. The FOIA itself explicitly contemplates *in camera* review, *see* 5 U.S.C. § 552(a)(4)(B), and the general rule is that counsel are not entitled to participate in *in camera* FOIA proceedings. *See, e.g, Salisbury v. United States*, 690 F.2d 966, 973–74 n. 3 (D.C.Cir. 1982). This is because such participation quite possibly would "compromise the secrecy" of the information that is in dispute. *See*

*Arieff v. Department of the Navy*, 712 F.2d 1462, 1469–70 & n. 2 (D.C.Cir.1983). We have cautioned that submission of documents and declarations *in camera* should be accompanied by "as much of a public record as possible." *See Antonelli v. DEA*, 739 F.2d 302, 303–04 (7th Cir.1984); *see also Campbell v. HHS*, 682 F.2d 256, 265 (D.C.Cir.1982). However, we have not required disclosure of documents properly withheld under the FOIA in order to ensure the proper functioning of the adversary process. Thus, the district court did not err in this regard.

■ Finally, the appellants make two arguments that in this case disclosure of the withheld documents would not, in fact, interfere with enforcement proceedings. First, they argue that their request does not relate to any ongoing criminal proceedings, because the Government has already obtained convictions against the individuals about whom they sought information: "How can production 'sabotage' cases in which the Government has already prevailed by plea agreements and criminal convictions?" Although the appellants are correct that the Government has closed its cases against the specific individuals named in the FOIA request, the information that the Government compiled against them is part of the information that it has compiled for an ongoing investigation. The fact that the Government has closed a particular investigation does not make it any less likely that disclosure in this case "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *see also New Eng. Med. Ctr. Hosp. v. NLRB*, 548 F.2d 377, 386 (1st Cir. 1976) (affirming the exemption of documents in a closed file because "the closed file is essentially contemporary with, and closely related to, the pending open case to which the records relate").

■ Second, the appellants argue that disclosure in the instant case would actually assist, and not interfere with, the Government's antitrust enforcement. Cognizant of the powerful private antitrust remedies created by Congress, the appellants note that "the purpose of giving private parties treble damage and injunctive remedies was not

merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws." *Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 130–31, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969). Given the congressional goal of private enforcement of the antitrust laws, the plaintiffs argue that disclosure of information to aid them in the *Arch Minerals* litigation cannot possibly interfere with government enforcement of the antitrust laws.

The appellants' argument again expresses a fundamental misunderstanding of the broad public purposes of the FOIA. While they claim that the documents they seek "are to be used exclusively to aid private antitrust litigation", we have indicated that neither an individual's identity nor his intended use for the documents is relevant to a FOIA request. *See supra* note 4; *see also Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989) (recognizing that "the particular purpose for which the document is being requested" is not relevant to the determination of whether disclosure is warranted under the FOIA); *Robbins Tire*, 437 U.S. at 242 n. 23, 98 S.Ct. at 2327 (stating that an individual's rights under the FOIA are neither diminished nor enhanced by a "particular, litigation-generated need" for agency documents). The appellants' desire to use the withheld information to privately enforce the antitrust laws is therefore not relevant to our determination of the merits of the appellants' request. "Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest [in a particular document]." *Department of Defense v. Federal Labor Relations Auth.*, 510 U.S. 487, 496, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994) (alteration in original) (internal citations and quotations omitted). Thus, disclosure of the requested information to the appellants would also mandate disclosure to any potential defendant who files a FOIA request. We are therefore unable to accept the appellants' argument that disclosure would not interfere with the Government's ongoing enforcement proceedings.

### IV.

For the foregoing reasons, we affirm the decision of the district court.