In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 19-2088

NATIONAL IMMIGRANT JUSTICE CENTER,

*Plaintiff-Appellant*,

*v.*

UNITED STATES DEPARTMENT OF JUSTICE,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-4691 — **Andrea R. Wood**, *Judge*.

_____

ARGUED FEBRUARY 14, 2020 — DECIDED MARCH 23, 2020

_____

Before RIPPLE, SYKES, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Receiving confidential advice is essential to sound decision-making. The law of privilege owes its existence to that reality and finds application in many settings, including decision-making within the executive branch of our national government. Consider the setting front and center in this appeal—immigration. Congress has empowered the Attorney General with enforcement, rulemaking, and adjudicatory authority. The exercise of that power is of great

consequence on many fronts, including in the direction of the nation's immigration policy and the lives of many noncitizen immigrants. Those very same reasons explain why the Attorney General, as part of exercising the responsibility conferred by Congress, will seek and receive confidential input from a range of advisors within the Department of Justice.

Unsettled by decisions made by Attorneys General across three presidential administrations, the National Immigrant Justice Center invoked the Freedom of Information Act and sought access to all records of communications to and from the Attorney General in certain immigration appeals certified for executive decision. The Department of Justice honored aspects of the requests but withheld many responsive documents on the basis of FOIA's exemption for communications protected by the deliberative process privilege. The district court found the withholding proper, and so do we. To conclude otherwise would chill the deliberations that department and agency heads like the Attorney General undertake in confidence to execute the weighty responsibilities of their offices.

## I

### A

The National Immigrant Justice Center provides immigration legal services for low-income noncitizens. To advance its mission, NIJC lodged a FOIA request with the Department of Justice for communications related to the Attorney General's decisions in certain immigration appeals. Some background on immigration removal proceedings and the Attorney General's role in them puts in context NIJC's request and our ensuing analysis.

When the government believes that a noncitizen is in the United States without permission, the Department of Homeland Security may initiate removal proceedings in immigration court. The immigration court is not an Article III federal court, but instead resides within the executive branch—specifically, within the Department of Justice's Executive Office for Immigration Review. See 8 C.F.R. § 1003.14. Either party can appeal an immigration judge's removal decision to the Board of Immigration Appeals or BIA. See *id.* § 1003.38. The BIA likewise resides within DOJ. See *id.* DHS attorneys are tasked with defending and pursuing appeals before the BIA.

As the head of DOJ, the Attorney General has discretionary authority to review any BIA decision. See 8 C.F.R. § 1003.1(h). This review happens through a process known as certification. See *id.* § 1003.1(h)(1)(i). Upon certifying a case, the Attorney General proceeds to review the Board's removal decision and issues a binding and precedential opinion. See *id.* § 1003.1(g), (h). The Attorney General does not do this work in isolation, and instead may tap DOJ's full resources for advice and assistance. Indeed, federal regulations recognize that the Attorney General may consult with attorneys from across the Department, including the Office of Legal Counsel, the Office of Immigration Litigation, and the Office of the Solicitor General as part of the deliberative decision-making process within DOJ. See 28 C.F.R. §§ 0.20(a), (d), 0.25(a), 0.45(k).

After the removal proceedings have run their course in the executive branch, the immigrant can petition a federal circuit court for review of a BIA or Attorney General decision. See 8 U.S.C. § 1252. At that stage, attorneys from DOJ's Office of

Immigration Litigation represent the government. See 28 C.F.R. § 0.45(k). Attorneys from the Office of the Solicitor General fulfill that responsibility if a case proceeds to the Supreme Court. See *id.* § 0.20(a).

B

In December 2010, NIJC submitted to DOJ a FOIA request for records of all communications between the Attorney General, the Office of the Attorney General, and any lawyer in the Department's Office of Immigration Litigation or the Office of the Solicitor General related to 11 certified cases decided between 2002 and 2009. DOJ produced about 1,000 pages of documents but withheld over 4,000 more on the basis of exemptions Congress provided in FOIA. Among the exemptions DOJ invoked was Exemption 5, which allows the withholding of agency memoranda not subject to disclosure through the discovery process in the ordinary course of litigation. See 5 U.S.C. § 552(b)(5). Courts have interpreted Exemption 5 to encompass the attorney work product, attorney client, and deliberative process privileges. See *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); see also *King v. IRS*, 684 F.2d 517, 519 (7th Cir. 1982). This appeal centers around 300 responsive documents withheld on the basis of the deliberative process privilege. We have no occasion to discuss documents withheld on other grounds.

NIJC filed suit challenging DOJ's withholdings and in time the parties cross-moved for summary judgment. DOJ shouldered the burden of demonstrating the propriety of its invocation of Exemption 5. See *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995) (explaining that at summary judgment, the government must provide affidavits describing the documents and its reason for withholding them "with sufficient

specificity to demonstrate that material withheld is logically within the domain of the exemption claimed" (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993))). To carry that burden, DOJ submitted affidavits detailing the search for responsive documents as well as a so-called Vaughn index—a log listing and describing each document withheld (in whole or part) from production. See *id*. at 839 n.11.

DOJ's Vaughn index itemized hundreds of documents (mainly email correspondence) reflecting discussions between attorneys working within different offices of issues related to immigration cases under consideration or on certification for decision by the Attorney General. A few examples provide a more detailed flavor:

- A memorandum from the Office of the Deputy Attorney General to Attorney General John Ashcroft about five BIA decisions to consider certifying;

- Emails between attorneys from the Office of Immigration Litigation, the Office of Legal Policy, and the Offices of the Attorney General and the Deputy Attorney General about an *amicus curiae* brief received in the *Matter of Silva-Trevino* before Attorney General Michael Mukasey issued his opinion; and

- Emails between attorneys from the Offices of the Attorney General and Solicitor General commenting on a draft order of Attorney General Eric Holder vacating a previous opinion in the *Matter of Compean*.

NIJC did not quibble with DOJ's representations that the withheld documents contained deliberative communications. Rather, NIJC challenged DOJ's withholding on the ground that the documents also contained *ex parte* communications outside the scope of Exemption 5.

It takes some untangling to explain how NIJC sees the withheld documents as containing *ex parte* communications. NIJC starts with the assertion that the DOJ attorneys' eventual litigation role taints the advice they provide the Attorney General at the certification stage. "[P]retending these offices can set aside their adversarial interests when advising the Attorney General ignores reality," NIJC urges, because removal proceedings almost always end in federal court litigation where those exact same attorneys are opposite the immigrant. Put most directly, "[b]ecause those offices may end up litigating against the immigrant in federal court, their communications with the Attorney General must be disclosed" as *ex parte* communications. NIJC insists that any other conclusion affords the noncitizen a disadvantage in litigation because the DOJ attorneys will have contributed to the substance of the Attorney General's decision in ways that can have a substantial and detrimental effect on the immigrant's ability to remain in the United States. So, as NIJC would have it, the only way to level the playing field—to achieve fairness and avoid bias—is to view the DOJ attorney advice as *ex parte* communications outside the protection of Exemption 5.

The district court rejected NIJC's position and concluded that Exemption 5 applied. The withheld documents did not contain *ex parte* communications, the court reasoned, because the Office of Immigration Litigation and Solicitor General attorneys do not hold interests adverse to the noncitizen at the

stage of a removal proceeding at which the Attorney General certifies a case for decision. To the contrary, at that stage all DOJ attorneys "were simply groups within the same agency as the Attorney General, giving advice."

NIJC now appeals.

### III

#### A

Congress enacted the Freedom of Information Act to "ensure an informed citizenry" and to "hold the governors accountable to the governed." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 386 (7th Cir. 2015). The enactment favors disclosure: federal agencies must produce each and every responsive record unless it fits within a statutory exemption. See 5 U.S.C. § 552(a)(4)(B); see also *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 259 (D.C. Cir. 1977) ("Where there is a balance to be struck, Congress and the courts have stacked the scales in favor of disclosure and against exemption.").

This appeal revolves around Exemption 5. By its terms, this exemption authorizes the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As the Supreme Court recognized in *Sears*—a case decided nine years after FOIA's enactment in 1966—Congress intended the statute's exemptions to mirror civil discovery privileges. See 421 U.S. at 149. The Court therefore recognized that Exemption 5 incorporates the deliberative process privilege. See *id*. at 150; see also *EPA v. Mink*, 410 U.S. 73, 86 (1973) (explaining the "recognized rule" that confidential agency advisory opinions were

privileged and therefore ordinarily exempt from production in civil discovery absent a showing of hardship).

The deliberative process privilege, as its name implies, allows an agency to withhold "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears*, 421 U.S. at 153. The privilege "prevent[s] injury to the quality of agency decisions." *Id.* at 151. Or, as the D.C. Circuit has put the same point, the privilege serves the important purpose of facilitating "frank discussion of legal and policy issues." *Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc); see also *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005) (explaining that the "inclusion [of the deliberative process privilege] in the [FOIA] statute 'reflects the legislative judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to "operate in a fishbowl" because the full and frank exchange of views on legal or policy matters would be impossible'" (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997))). The privilege roots itself in "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news[.]" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001).

The privilege is not unlimited, however. To the contrary—and in full alignment with the Supreme Court's repeated admonition to construe FOIA exemptions with a "narrow compass," see *id.* at 8—we insist on the government making a twofold showing to support the withholding of a record based on the deliberative process privilege. First, the document must be pre-decisional, meaning that it must be "generated *before*

the adoption of an agency policy." *Tax Analysts*, 117 F.3d at 616 (internal citations omitted). Second, the record in question must contain deliberative communications and therefore "reflect the give-and-take of the consultative process." *Id.*; see also *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 375 (7th Cir. 2004) (explaining that documents were deliberative because they reflected "the internal dialogue at the EPA" regarding a proposed rule).

The Federal Reporter contains many examples of courts (including our own) sustaining an agency's invocation of deliberative process privilege in response to a FOIA request. See, *e.g.*, *Enviro Tech*, 371 F.3d at 375 (allowing the withholding of draft documents and internal recommendations related to a new EPA regulation to limit workplace exposure to a toxin); *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015) (upholding withholding of DHS asylum interviewer's report to supervisor assessing asylee's credibility and consistency before making a decision on asylum application because "[a] recommendation to a supervisor on a matter pending before the supervisor is a classic example of a deliberative document"); *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 9–10 (D.C. Cir. 2014) (concluding that a legal opinion prepared by DOJ's Office of Legal Counsel for the FBI about a policy of obtaining certain telephone records was protected by deliberative process privilege); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (affirming the invocation of deliberative process privilege to justify withholding of CIA historian's draft of the fifth volume on the Bay of Pigs invasion); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1120 (9th Cir. 1988) (determining that the deliberative process privilege supported withholding the U.S. Forest Service's

draft forest management plans because they were "merely
working drafts subject to revision").

B

Our cases are foggy on the standard under which we re-
view a district court's determination at summary judgment
that a particular FOIA exemption authorized the withholding
of a document. In some cases, we have said that we review for
clear error because the procedural quirks of FOIA litigation
(in which the non-moving party often knows little about the
requested documents) require extra deference to district
courts. See, *e.g.*, *Enviro Tech*, 371 F.3d at 374 (applying clear
error review); see also *Rubman*, 800 F.3d at 388 (echoing much
the same reasoning to support a deferential review). Yet in
other cases we found no reason to depart from the *de novo*
standard of review that ordinarily applies when reviewing
summary judgment decisions. See, *e.g.*, *Matter of Wade*, 969
F.2d 241, 245 (7th Cir. 1992). We are not alone in recognizing
this lack of clarity. See *Higgs v. U.S. Park Police*, 933 F.3d 897,
903 (7th Cir. 2019) (noting a lack of consensus among the cir-
cuits on the standard of review applicable in FOIA cases).

We need not settle the question, for this appeal presents
neither disputed facts nor any of the special considerations
sometimes present in FOIA litigation. See *Rubman*, 800 F.3d at
388–89. The district court required from DOJ a detailed log of
the documents withheld, which provides all the factual con-
text necessary to decide the legal question on appeal: whether
Exemption 5 authorized the withholding of the documents
itemized on its Vaughn index. So we proceed *de novo* by taking
a fresh look at whether DOJ carried its burden to justify with-
holding the documents on the basis of the deliberative process
privilege.

The district court got it exactly right in answering yes. Indeed, the challenged documents are paradigmatic examples of records embodying deliberative communications. Recall what NIJC sought—all communications to and from the Attorney General or the Office of the Attorney General discussing the pros and cons of certifying a case for decision, commenting on different lines of reasoning supporting a particular decisional path, and offering suggestions on draft opinions. The documents, in short, embody precisely the type of legal and policy discussions and exchanges of ideas at the heart of the deliberative process privilege. Exemption 5 exists to authorize DOJ's withholding of these documents from public disclosure.

NIJC does not dispute that the documents fall within the ambit of the deliberative process privilege. It instead renews the invitation it extended to the district court to view the documents as embodying both pre-decisional discussions *and ex parte* communications, and to conclude that the presence of the latter removes the records from the protection otherwise conferred by Exemption 5. The DOJ attorneys from the Office of Immigration Litigation and the Office of the Solicitor General, NIJC reasons, may ultimately serve as opposing counsel if the noncitizen does not prevail before the BIA and then appeals to a federal court. Because of this arrangement, NIJC posits, the attorneys might "attempt to advance an adverse interest before the Attorney General" during the certification decision-making process—a reality that could result in a disadvantage to a noncitizen who may later face the same DOJ attorney in court proceedings.

NIJC's position misses the mark. At the time that the Attorney General certifies a case and chooses to consult with

attorneys in DOJ's Office of Immigration Litigation or Office of the Solicitor General, no litigation is pending in any federal court. The removal proceeding is ongoing solely within DOJ, awaiting a decision by the Attorney General. In no way are the attorneys—at that point in the multi-step process that can result in an immigrant's removal—advising and assisting the Attorney General adverse to the noncitizen. Attorneys assisting an adjudicator do not engage in *ex parte* communications when performing their duties.

NIJC sees this reasoning as artificial and unduly formalistic because Office of Immigration Litigation and Solicitor General attorneys cannot be neutral advisors one minute and adversarial litigators the next. "More often than not," NIJC tells us, "when an Attorney General certifies a BIA decision for review, the noncitizen loses, making it readily apparent that [attorneys from the Offices of Immigration Litigation and the Solicitor General] would be adverse to the noncitizen going forward."

This argument fails on its terms, for NIJC recognizes that DOJ attorneys become adversaries in removal proceedings only when a dispute leaves the Department and moves to the judicial branch. That is precisely what NIJC acknowledges when it points to adversity "going forward." And it is that exact reality that confirms the district court was right to sustain DOJ's withholding of the challenged documents: at no point do Office of Immigration Litigation or Solicitor General attorneys represent the Department in an adversarial proceeding before the Attorney General. Put another way, the unfairness that the *ex parte* communications doctrine seeks to prevent—namely, that one party has the judge's ear while his adversary lacks the same opportunity, see *Drobny v. Comm'r of Internal*

*Revenue*, 113 F.3d 670, 670 (7th Cir. 1997)—does not apply here.

Nor does NIJC offer any limiting principle. It falls flat to insist this case presents concerns unique in the immigration context. Today's administrative state is no small enterprise. Nor is DOJ alone in Washington in exercising rulemaking, enforcement, and adjudicatory authority to fulfill congressionally-mandated responsibilities. See *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991); see also RICHARD J. PIERCE, JR. & KRISTIN E. HICKMAN, ADMINISTRATIVE LAW TREATISE § 1.1 (6th ed.) (recognizing the expanse of today's administrative state and underscoring the broad range of responsibilities and decisions committed to administrative agencies).

We see no principled way to decide today's case in NIJC's favor and not undermine the confidentiality on which sound decision-making depends within any number of other agencies and departments. It is commonplace for agency and department lawyers to advise policymakers on specific matters and later to provide litigation advice when the same matter finds its way into court in some way, shape, or form. NIJC has offered nothing to assuage this concern, and indeed its complete silence on the point speaks volumes.

For these reasons, we AFFIRM.