In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 22-2445 & 23-1900

JESUS VIDAL-MARTINEZ,

*Plaintiff-Appellant,*

*v.*

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and
UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,

*Defendants-Appellees.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07772 — **Matthew F. Kennelly**, *Judge.*

———————————

ARGUED MAY 23, 2023 — DECIDED OCTOBER 24, 2023

———————————

Before SYKES, *Chief Judge*, and BRENNAN and PRYOR, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Jesus Vidal-Martinez filed two Freedom of Information Act (FOIA) requests with Immigration and Customs Enforcement (ICE), seeking disclosure of information about his transfer from ICE custody to officials in

Decatur County, Indiana, where he faced state criminal charges. This case concerns redactions in a subset of documents that ICE produced. After *in camera* review, the district court ruled that ICE properly withheld the redacted information under FOIA's exemption provisions. Vidal-Martinez appeals the district court's ruling. Because that court committed no clear error, we affirm. We also affirm the district court's denial of Vidal-Martinez's request for attorney's fees because he did not prevail.

## I

The FOIA requests at issue relate to Vidal-Martinez's immigration proceedings, so we begin there. Vidal-Martinez, a non-citizen living in the United States, was arrested by Indiana authorities three times for operating a vehicle while intoxicated. After his third arrest in June 2020, the U.S. Department of Homeland Security detained him at the McHenry County Detention Center in Illinois, and ICE initiated deportation proceedings.

### A. Habeas Proceedings

While detained, Vidal-Martinez filed a petition for a writ of habeas corpus. He argued that his detention was unconstitutional, in part, because it impeded his ability to defend himself against the drunk-driving charges he faced in Indiana. ICE asked a prosecutor whether Decatur County planned to pursue its charges against Vidal-Martinez. If so, ICE would need a writ of habeas corpus ad prosequendum[1] to transfer

---

[1] Using this writ, "a sovereign may take temporary custody of a prisoner in the custody of another sovereign, for the purpose of prosecution, without acquiring primary custody." *Pope v. Perdue*, 889 F.3d 410, 412–13 (7th Cir. 2018).

custody of Vidal-Martinez. The Decatur County Superior Court issued such a writ, and ICE transferred Vidal-Martinez to county custody. The writ stated that Vidal Martinez would remain with the county "until the completion of [the] criminal matter, then released to his ICE detainer."

After the transfer, ICE moved to dismiss Vidal-Martinez's habeas petition because he was no longer in ICE custody. The habeas court denied the motion. *See Vidal-Martinez v. Prim*, No. 20 C 5099, 2020 WL 6441341, at *1 (N.D. Ill. Nov. 3, 2020). Under this type of writ, the court explained, Indiana had only temporary custody over Vidal-Martinez for the duration of his criminal matter; ICE "maintain[ed] primary custody" as the "sending sovereign." *Id.* at *5. Otherwise, "ICE could avoid jurisdiction by transferring detainees to different facilities." *Id.* at *5 n.6. ICE unsuccessfully moved the district court to reconsider, arguing that Vidal-Martinez's return to ICE custody was "by no means inevitable," "counties often disregard [a] writ's language," and "the detainer is not a form of legal compulsion that guarantees [Vidal-Martinez's] return." ICE also emphasized that it had not initiated Vidal-Martinez's transfer "to affect habeas jurisdiction, but to accommodate [his] desire to return to Indiana to litigate his drunk-driving charges."

While in Decatur County, Vidal-Martinez was convicted on the drunk-driving charge and sentenced to 236 days in jail. He was then returned to ICE custody. Due to a lack of evidence that he posed a flight risk or a danger to the community, the district court granted Vidal-Martinez's habeas petition and ordered his release. *See Vidal-Martinez v. Acuff*, No. 21-cv-224-NJR, 2021 WL 1784948, at *6 (S.D. Ill. May 5, 2021).

**B. FOIA Requests**

In October and December 2020, Vidal-Martinez filed two requests under FOIA, 5 U.S.C. § 552, seeking disclosure from ICE of email communications, notes, and reports related to his custody transfer to Decatur County. ICE acknowledged receipt of his first request in November 2020 but failed to process it within FOIA's 20-day statutory time frame. *See* 5 U.S.C. § 552(a)(6)(A). So, Vidal-Martinez initiated this lawsuit against ICE and submitted a second FOIA request in December 2020. The district court granted ICE's request for an extension to respond to Vidal-Martinez's complaint. ICE explained it was actively working through a COVID-era backlog of requests which it answered in the order received. Between March and April 2021, ICE produced 561 pages of responsive documents, some of which contained redactions. It later produced additional records in August 2021.

Vidal-Martinez challenged ICE's redactions in a 51-page subset of the produced records, and the parties filed cross-motions for summary judgment. ICE provided the district court with a *Vaughn* index[2] and a declaration from its FOIA officer explaining the legal justification for each redaction at issue. ICE claimed its redactions fell into two categories: (1) information protected by the attorney-client, work product, or deliberative process privileges withheld under 5 U.S.C. § 552(b)(5); and (2) identifying information of government employees withheld under 5 U.S.C. § 552(b)(6) and (b)(7)(C). Vidal-Martinez responded that ICE committed criminal

---

[2] A *Vaughn* index lists each withheld document cross-referenced with the FOIA exemption that the government agency asserts applies. *See Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973).

conduct by transferring him to Indiana, so the crime-fraud exception to attorney-client privilege applied.

After reviewing the unredacted versions of the 51 pages *in camera*, the district court granted summary judgment to ICE. It found that ICE had properly invoked the § 552(b)(5) exemption because the communications discussed ICE's decision to transfer Vidal-Martinez and were therefore protected by the deliberative process privilege. And it concluded that ICE could redact the names of government employees under § 552(b)(6) and (b)(7)(C) because disclosure would not serve any public interest.

The district court rejected Vidal-Martinez's crime-fraud argument. The redacted emails "consist[ed] of conversations between ICE attorneys and a Decatur County prosecutor" about whether "to transfer Vidal-Martinez." In those discussions, ICE attorneys "believed a conviction in the state court cases would strengthen ICE's case for deportation." Although incorrect, the ICE attorneys "genuinely believed" that a custody transfer "would result in the federal court losing jurisdiction over the habeas corpus case." The court found "no evidence that ICE deliberately misled the [habeas] court when it argued that the habeas case should be dismissed." So, the crime-fraud exception did not apply. Vidal-Martinez now appeals the district court's grant of summary judgment in favor of ICE.

While this appeal was pending, Vidal-Martinez petitioned the district court for attorney's fees. He argued that he "substantially prevailed" because his complaint prompted ICE to "change [its] position" by producing the requested documents. 5 U.S.C. § 552(a)(4)(E)(i), (ii). The district court disagreed, reasoning that ICE consistently maintained its intent to

respond to Vidal-Martinez's request. Any delay in satisfying the FOIA requests did not amount to a change in position, so the district court denied Vidal-Martinez's motion. Vidal-Martinez also appeals the denial of his request for fees, which we consolidated with his summary judgment appeal.

## II

Congress enacted FOIA to "ensure an informed citizenry" and to "hold the governors accountable to the governed." *Nat'l Immigrant Just. Ctr. v. U.S. Dep't of Just.*, 953 F.3d 503, 507 (7th Cir. 2020). Under the Act, "federal agencies must produce each and every responsive record unless it fits within a statutory exemption." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)). So, although FOIA favors disclosure, it also includes exemptions "to protect certain interests in privacy and confidentiality." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998). The government "bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption." *Id.*

We employ a unique standard when reviewing a district court's decision on summary judgment that an agency could properly withhold information under a FOIA exemption. We first consider "*de novo* whether … the district court had an adequate factual basis for its decisions." *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 342 (7th Cir. 2021). This depends on "the specificity of the agency's affidavit, its *Vaughn* index, and whether the district court conducted an *in camera* review of the contested materials." *Id.* "Our purpose at this stage is to decide whether the district court had enough in front of it to make a legally sound decision about whether an exemption applies." *Id.* If an exemption applies, we review a district court's conclusion for clear error as "the district court is best

situated to conduct the comprehensive, record-by-record review that FOIA withholdings may require." *Id.* (citing *Becker v. IRS*, 34 F.3d 398, 402 n.11 (7th Cir. 1994)).[3]

### A. Adequate Factual Basis

The district court had an adequate factual basis to evaluate ICE's withholdings. To start, ICE provided that court with a detailed affidavit from its FOIA officer and a *Vaughn* index. But the district court did not rely on either in considering whether the withheld information was protected from disclosure. Instead, at Vidal-Martinez's request, the court reviewed all 51 documents *in camera*, which provided it with more than an adequate factual basis.[4] *See Solar Sources*, 142 F.3d at 1038–39 (concluding the district court had an adequate factual basis when it reviewed *in camera* a random sampling of "a FOIA request comprising millions of pages of documents" in combination with a "sworn declaration from … a government official"); *Becker*, 34 F.3d at 402 (concluding the district court had

---

[3] Vidal-Martinez asks this court to abandon the basis-and-error standard of review used in FOIA exemption cases. In its place, he suggests we adopt a de novo standard. We have previously acknowledged our "doubts" about "how the clear-error standard pops up in an appeal from a summary-judgment ruling, given how well established the *de novo* standard of review is in such cases." *Higgs v. U.S. Park Police*, 933 F.3d 897, 903 (7th Cir. 2019). But here, as in other cases, we find it unnecessary to reconsider the standard governing FOIA exemption cases. *See id.*; *Solar Sources*, 142 F.3d at 1038 n.5; *Becker*, 34 F.3d at 402 n.11.

[4] Vidal-Martinez contends the district court improperly excluded ICE's affidavit and *Vaughn* index without evaluating those documents as evidence under Federal Rule of Evidence 403. Rather than exclude those documents, though, the court found "it unnecessary to rely" on them given its *in camera* review of the unredacted versions of all the contested documents.

an adequate factual basis when it had "not only the [agency's] *Vaughn* index, but [it also] conducted an *in camera* review); *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 876 (7th Cir. 2018) (noting "[t]he district court would have had a stronger factual basis for its decision if the judge had reviewed the *Vaughn* indices or conducted an *in camera* review of at least a reasonable sample of the documents").

### B. FOIA Exemptions

In the 51 documents at issue, ICE withheld—through redactions—information based on three FOIA exemptions. Exemption 5 authorizes the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). We have understood this exemption "to apply to documents that would be privileged in the government's litigation against a private party," *Stevens*, 20 F.4th at 345 (citing *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004)), meaning it "encompass[es] the attorney work product, attorney client, and deliberative process privileges."[5] *Nat'l Immigrant Just. Ctr.*, 953 F.3d at 506. For ICE, the redacted information fell within Exemption 5 because it included ICE attorneys' work product prepared in anticipation of pending litigation, deliberations about ICE's decision to transfer Vidal-Martinez, and confidential advice provided by ICE attorneys to the agency.

---

[5] The deliberative process privilege allows an agency to protect "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Nat'l Immigrant Just. Ctr.*, 953 F.3d at 508.

Exemptions 6 and 7(C) allow agencies to withhold "personnel and medical files," 5 U.S.C. § 552(b)(6), or information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), if disclosed. ICE removed the identifying information of government employees because it determined disclosure would put those employees at risk of harassment and would serve no public benefit.

On appeal, Vidal-Martinez does not contest the district court's conclusion that these exemptions apply to the withheld information. Rather, he argues the district court clearly erred in concluding that the crime-fraud exception to attorney-client privilege did not apply. "The crime-fraud exception places communications made in furtherance of a crime or fraud outside the attorney-client privilege." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007) (citing *United States v. Zolin*, 491 U.S. 554, 563 (1989)). To invoke the exception, the party seeking to defeat attorney-client privilege must "present prima facie evidence that gives colour to the charge by showing some foundation in fact." *Id.* (cleaned up). According to Vidal-Martinez, ICE sought to deprive him of his habeas rights, in violation of 18 U.S.C. § 241 and § 242, by transferring him to Decatur County. He also contends ICE misled the habeas court, in violation of 18 U.S.C. § 1512(c)(2), when it argued that Vidal-Martinez's return to ICE custody was uncertain.

The district court found "no evidence that ICE deliberately misled the [habeas] court when it argued that [Vidal-Martinez's] habeas case should be dismissed" based on Vidal-Martinez's custody transfer to Decatur County. For the

district court, "the ICE attorneys appear to have genuinely believed that [the] transfer … under a writ of habeas corpus *ad prosequendum* would lead to dismissal of the habeas corpus case." It therefore found the crime-fraud exception inapplicable.

The district court did not clearly err in its decision. We too find no factual foundation in the record for misconduct, let alone criminal conduct, by ICE. The agency did not engage in a criminal conspiracy by coordinating with Decatur County to allow Vidal-Martinez's criminal prosecutions to go forward. And no evidence supports Vidal-Martinez's contention that the federal government intentionally misled the habeas court. According to the writ of habeas corpus ad prosequendum, Vidal-Martinez would remain with Decatur County until the completion of his criminal matter, "when he will be released on a detainer to ICE." ICE argued that its ability to produce Vidal-Martinez in response to a habeas writ would depend on whether Indiana honored ICE's detainer, which was "by no means a certainty." So, even if ICE expected Decatur County to cooperate with the terms of the writ and the detainer, it remained a possibility that it would not. Acknowledging this possibility did not intentionally mislead the habeas court.

Further, filing a motion to dismiss the habeas petition—based on a genuine belief that transfer destroyed jurisdiction—does not mean ICE sought to "thwart" habeas review, as Vidal-Martinez claims. Ultimately, Vidal-Martinez obtained both habeas review and habeas relief. The district court committed no clear error when it decided that the crime-fraud exception did not apply.

### III

Vidal-Martinez also challenges the district court's decision not to award him costs. The district court reasoned that Vidal-Martinez had not substantially prevailed. When the district court's denial of attorney's fees "rests on the application of a principle of law, our review is *de novo.*" *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 675 (7th Cir. 2009).

A district court may award "reasonable attorney fees" to a FOIA plaintiff if he or she "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff "substantially prevailed" if he or she obtained relief through "(I) a judicial order" or "(II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Even so, "the district court has discretion to deny costs after considering, among other factors, the litigation's benefit to the public." *White v. U.S. Dep't of Just.*, 16 F.4th 539, 545 (7th Cir. 2021).

Vidal-Martinez contends his FOIA lawsuit prompted ICE to voluntarily change its position by responding to his FOIA requests. But ICE maintained the same position—that it would respond to his requests and provide him with all non-exempt responsive records—before and after Vidal-Martinez sued. ICE informed the district court that it responds to FOIA requests in the order received and that it faced administrative delays in processing those requests due to a COVID-era backlog. Regardless of those delays, ICE consistently stated its intent to respond, and nothing in the record suggests ICE took a position to the contrary. ICE's production of documents resulted from the normal processing of FOIA requests.

Vidal-Martinez also asserts that because ICE produced documents with redactions, he prevailed. Yet this does not represent a "change in position" by the agency. The parties disagreed with what was exempt under FOIA; hence, the records when produced were redacted. This was part of the back-and-forth process of an agency handling a FOIA request. Even more, the district court resolved the remaining redaction issues in ICE's favor at summary judgment.

Vidal-Martinez has not shown that his complaint prompted ICE to voluntarily change its position. *See, e.g.*, *First Amend. Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119, 1128 ("[T]he mere fact that information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has 'substantially prevailed.'"); *White v. U.S. Dep't of Just.*, 460 F. Supp. 3d 725, 782 (S.D. Ill. 2020), *aff'd*, 16 F.4th 539 (7th Cir. 2021) (denying costs when the agency "always indicated an intent to comply with FOIA in responding to [the plaintiff's] requests" even if the agency had "not always complied with the required timelines"). Because Vidal-Martinez did not substantially prevail, he is not entitled to attorney's fees.

## IV

For these reasons, we AFFIRM the district court's grant of summary judgment to ICE as well as its denial of Vidal-Martinez's request for attorney's fees.